BRAWER BROTHERS, INCORPORATED, A CORPORATION OF NEW JERSEY, PLAINTIFF-APPELLEE, v. DeGISE SILK DYEING COMPANY, INCORPORATED, A CORPORATION OF NEW JERSEY, DEFENDANT-APPELLANT.

Submitted January 31, 1936—Decided May 21, 1936.

Before Justices HEHER and PERSKIE.

For the appellant, *Archibald Krieger*.

For the appellee, *Abraham Brenman*.

The opinion of the court was delivered by

PERSKIE, J. This cause comes to us on defendant's appeal from a judgment entered by the trial judge, sitting without a jury, in favor of the plaintiff below in the sum of $291 and costs.

Plaintiff's suit against the defendant was for damages (cost of repairs) to its freight elevator caused by the alleged negligent, careless and reckless manner in which defendant's servant operated the elevator; the manner in which he placed the goods on the elevator, and the position which he himself assumed while on the elevator. (Answer to second interrogatory.)

The state of case, as settled by the court, discloses, substantially, that the elevator was located in a building owned by the plaintiff, in Paterson, New Jersey. This elevator is

used by all tenants in the building, and by those who have business with the tenants. It is operated with a single hoisting cable, controlled by the person using it, which lifts the elevator up and down, upon proper manipulation of the control cable located on the side of the car next to the front gate. The cable is adjusted so that the car automatically stops at the bottom floor. It has a capacity of four thousand pounds and is equipped with scissor extension or collapsible gates at the front and rear. Each gate is fixed into a guide track by means of iron pins and the gate opens and closes when propelled along this guide track. The shaft in which the elevator is located has a door on the front side for entrance into each floor of the building. In the shaftway are located several windows, one above the other. On the day of the accident, and before it was used by defendant's servant, it was inspected by plaintiff's superintendent and found to be "in proper working condition."

On August 1st, 1934, Mosca, defendant's servant, called to take one hundred and forty-four pieces of silk, weighing one thousand and seventy pounds, from one of the plaintiff's tenants located on the fourth floor. On the trip to the fourth floor he experienced no difficulty and found the elevator operating properly. This load was an unusually large one for the elevator; it contained fifty pieces more of silk than had ever been carried on one elevator trip. Mosca *packed the silk on the elevator in such a manner as to force the rear collapsible gate to bend to such an extent that the gate scraped on the walls of the shaft.* Mosca was not standing at the control cable but was sitting on the pile of silk when the elevator in its descent reached a window opening; the protruding gate caught on the window sill and the elevator was held suspended there for a short time. The control cable was not operated by Mosca with the result that the machinery was kept in motion and the hoisting cable continued to unwind causing it to accumulate slack. During this time the elevator was sustained in its suspended position solely by the contact of the elevator gate to the shaft. The door soon gave way and with this contact removed the elevator dropped to the

basement, where it automatically came to a stop and was damaged. Since the door was open, Mosca came sliding out on the silk after which the extension gate, which had broken off, fell through the shaft.

Mosca, the only witness for the defendant, testified that he was employed by the defendant and that on the day in question he went to the premises for the purpose of obtaining this silk. He stated that he entered the elevator and that it worked properly on the trip to the fourth floor. He placed the one hundred and forty-four pieces of silk twenty on each side and the balance between these pieces. The car descended for a short distance and then stopped altogether; that he pulled on the operating rope but with no effect. After a short interval the elevator dropped and he got out of the car. He stated that he did not know the cause of the accident and that he did not push the gate against the wall of the elevator shaft and that he was not sitting on the goods when the elevator descended.

Under this posture of the proofs it was open to the trial judge, as the trier of the facts, to find, as he did find, that the failure of the elevator and the damages caused to it were brought about by the gate being loosened from the guide track and being precipitated against the elevator shaft wall; that while this obstacle remained the elevator cable unwound itself and after the obstacle against the wall was removed no force remained to permit the elevator to proceed in its normal course and it dropped to the bottom. In other words, that the defendant's servant was guilty of negligence as charged in the state of demand. Accordingly defendant's motion at the close of the trial for a nonsuit was denied.

Was this error? No. It has been said time and again by this court that, under such circumstances, a finding of fact supported by legal evidence, such as here presented, will be sustained unless other legal error appears. *Miko* v. *Feldman,* 13 *N. J. Mis. R.* 839; 181 *Atl. Rep.* 632.

Does other legal error appear? No.

The president of the plaintiff corporation testified that about half a minute after he heard the crash of the accident

he was on the scene. He saw defendant's servant standing in the yard with his hand slightly bleeding. He engaged in conversation with him and asked him what happened. Mosca told him that "the door was pushed out and the elevator crashed." It is argued that it was error to admit this testimony. We do not think so. It was part of the *res gestæ*. *Hannaford* v. *Central Railroad Company of New Jersey,* 115 *N. J. L.* 573; 181 *Atl. Rep.* 306; affirmed, case No. 51, February term, 1936.

There is no merit to the other points argued.

Judgment is affirmed, with costs.